OPINION
{¶ 1} On January 14, 2004, the Guernsey County Grand Jury indicted appellant, Darrell Brister, on one count of murder in violation of R.C.2903.02 and one count of involuntary manslaughter in violation of R.C.2903.04. Both counts carried firearm specifications. Said charges arose from the shooting death of James Aiello after partying with friends.
 {¶ 2} A jury trial commenced on March 16, 2004. At the close of the state's case, the trial court granted appellant a Crim.R. 29 motion for acquittal on the involuntary manslaughter count. The trial court denied the motion as to the murder count.
 {¶ 3} The jury found appellant guilty of murder. By judgment entry filed April 16, 2004, the trial court sentenced appellant to an aggregate term of eighteen years to life.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "The trial court erred in denying the defendant's rule 29 motion for judgment of acquittal on the charge of murder (count one) at the close of the state's case."
 II {¶ 6} "The court's denial of the defendant's motion for judgment of acquittal on count one (murder) at the close of the state's case was inconsistent with the court's ruling on the defendant's motion for judgment of acquittal on count two (involuntary manslaughter).
 III {¶ 7} "The jury's verdict of guilty on the charge of murder and the specification was against the manifest weight of the evidence."
 I, II {¶ 8} Appellant's first two assignments of error are interrelated and will be addressed collectively. Appellant claims the trial court erred in denying his Crim.R. 29 motion for acquittal on murder, and said denial was inconsistent with the trial court's granting of his Crim.R. 29 motion on the involuntary manslaughter count. We disagree.
 {¶ 9} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:
 {¶ 10} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 11} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 {¶ 12} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 13} R.C. 2903.02(A) defines murder as "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy." R.C. 2903.04(A) defines involuntary manslaughter as "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." The felony listed in the indictment was felonious assault in violation of R.C. 2903.11 which states the following:
 {¶ 14} "(A) No person shall knowingly do either of the following:
 {¶ 15} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 16} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 17} In reviewing the evidence, the trial court concluded the following:
 {¶ 18} "As to the second count, Involuntary Manslaughter, that is defined in Ohio law as knowingly causing or attempting to cause physical harm to James Aiello by a deadly weapon or dangerous ordnance. Here the thrust of this crime is the use of a deadly weapon to cause physical harm. The Court finds the definition of serious physical harm is any physical harm that carries a substantial risk of death but the Court is to determine if there is sufficient facts that would show that the defendant, Darrell Brister, knowingly caused or attempted to cause physical harm to James Aiello. The Court does not find on the state of the record before it that reasonable minds could come to a different conclusion here. In this case there is insufficient evidence to permit it to proceed to the jury on Involuntary Manslaughter.
 {¶ 19} "There's no showing that the deadly weapon was used to cause felonious assault. The deadly weapon was either used to murder the man or this is suicide. It's one or the other. There's insufficient evidence to proceed on Involuntary Manslaughter of causing or attempting to cause physical harm. I don't find the testimony of Dr. Lee supports that at all. His testimony is, in fact, not that he was bludgeoned over the head but he put the gun right up and pulled the trigger. So it would be impermissible and contrary to Ohio law for this Court and Judge to permit Involuntary Manslaughter to proceed. That could only confuse the jury. For we're either dealing with the purpose to cause the death of another or we're dealing with suicide or we're dealing with insufficient evidence to sustain a conviction. We should not confuse jurors with crimes that are not by definition properly before the Court." T. at 551-552.
 {¶ 20} We concur with the trial court's reasoning. First, appellant's defense was that he did not shoot Mr. Aiello as Mr. Aiello shot himself. T. at 167-168. In fact, appellant consistently maintained that Mr. Aiello shot himself. T. at 207, 307. Second, the cause of Mr. Aiello's death was a gunshot wound to the head above the right ear. T. at 238. Charles Lee, D.O., a pathologist, testified the gunshot wound was a direct contact wound with the gun barrel placed firmly against Mr. Aiello's head. T. at 488-489. This contact was so tight that the weapon's slide or site mark left an impression on the skin. T. at 490. Lastly, appellant had borrowed the gun from Christopher Dement some days before the incident and the chamber was empty. T. at 267. On the evening of the incident, appellant had physical possession of the gun on his person up to the time the shooting occurred. T. at 194, 290. All of these facts, coupled with the fact that Mr. Aiello was so drunk he was unable to get a piece of paper out of his pocket (T. at 201-203, 293-294), lead to only one conclusion, if believed, appellant's actions were purposeful. The act of placing the gun in contact with the skin on Mr. Aiello's head and pulling the trigger is purposeful killing as opposed to knowingly cause serious physical harm as in felonious assault.
 {¶ 21} This evidence leads to only two possibilities, murder or suicide, as the trial court determined. The granting of the Crim.R. 29 motion on the involuntary manslaughter count but not on the murder count was not inconsistent.
 {¶ 22} Assignments of Error I and II are denied.
 III {¶ 23} Appellant claims his conviction for murder was against the manifest weight of the evidence. We disagree.
 {¶ 24} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 25} As we noted in the previous assignments of error, the elements of murder are to purposefully cause the death of another. On the evening in question, appellant, Mr. Aiello and several other individuals went to a party. T. at 190, 292. After returning from the party, appellant and Mr. Aiello remained outside while everyone else went inside. T. at 207-208, 300. Thereafter, Mr. Aiello was shot. Appellant starting dragging Mr. Aiello toward the house, and then left the scene before police arrived because "he had a warrant out on him." T. at 216, 310.
 {¶ 26} The evidence established Mr. Aiello was killed by a direct contact gunshot wound to the head above the right ear "with an exit wound on the left side of the head." T. at 238, 486. "The bullet went through both sides of the brain, the temporal portion of the brain. It also lacerated the brain stem and then went out and exited the left side of the head." T. at 487. After the physical evidence was examined, A.J. Schwoeble, a forensic scientist, opined the gunshot residue found on Mr. Aiello's right sleeve of his jacket was inconsistent with Mr. Aiello shooting himself. T. at 448-449. Also, there was no gunshot residue on Mr. Aiello's hands. T. at 273, 452, 511. Mr. Schwoeble testified the amount of gunshot residue found on appellant's shirt "indicates the shirt was exposed to an environment of gunshot residue either from a discharge or being in close proximity." T. at 453. Mr. Schwoeble defined close proximity as "three to five feet from the firearm." T. at 453-454. This evidence was consistent with the shirt being on the shooter. T. at 454.
 {¶ 27} Appellant presented his own forensic scientist, Robert White, who opined some gunshot residue could have been transferred to appellant's clothing when he handled the victim, or rain could have deleted the residue on the victim. T. at 561-562, 570. Mr. White opined "this residue is found there [appellant's shirt] and there's no way of saying whether it got there by transfer or by standing near a gun or handling something that would be contaminated with something else." T. at 578.
 {¶ 28} Appellant and Mr. Aiello were the only ones outside at the time of the shooting. T. at 207-208, 300. Prior to the shooting, appellant was observed standing at the front of a vehicle urinating, and that is where the weapon was found by the police. T. at 175, 208.
 {¶ 29} It is true there was no animosity between appellant and Mr. Aiello, but all agreed they were "messed up," "tipsy * * * [i]ntoxicated but maybe, not drunk" as they had consumed at least a gallon of alcohol. T. at 188-189, 199-200, 285, 287-288. We note proof of motive is not necessary in determining the purposeful nature of a crime.
 {¶ 30} From the evidence presented, we find the jury could have accepted all of Mr. Schwoeble's testimony and found it to be consistent with the other evidence while discounting Mr. White's testimony. Given the gunshot residue evidence, the evidence presented is consistent with a guilty finding. Accordingly, we find the jury did not lose its way, and find no manifest miscarriage of justice.
 {¶ 31} Assignment of Error III is denied.
 {¶ 32} The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed.
Farmer, P.J. Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Guernsey County, Ohio is affirmed.